# EXHIBIT 1
***Complaint***

Electronically Filed
11/7/2025 1:17 PM
Steven D. Grierson
CLERK OF THE COURT

1  **COMP**
   ANTHONY P. SGRO
2  NEVADA BAR NO. 3811
   ALANNA C. BONDY
3  NEVADA BAR NO. 14830
   **SGRO & ROGER**
4  2901 El Camino Avenue, Suite 204
   Las Vegas, Nevada 89102
5  Telephone:  702.384.9800
   Facsimile:  702.665.4120
6  TSgro@SgroandRoger.com
   ABondy@SgroandRoger.com
7

8  JOHN R. BAILEY
   NEVADA BAR NO. 0137
9  DENNIS L. KENNEDY
   Nevada Bar No. 1462
10 JOSEPH A. LIEBMAN
   Nevada Bar No. 10125
11 PAUL C. WILLIAMS
   Nevada Bar No. 12524
12 JOE A. MORGAN
   Nevada Bar No. 16937
13 **BAILEY❖KENNEDY**
   8984 Spanish Ridge Avenue
14 Las Vegas, Nevada 89148-1302
   Telephone:  702.562.8820
15 Facsimile:  702.562.8821
   DKennedy@BaileyKennedy.com
16 JBailey@BaileyKennedy.com
   JLiebman@BaileyKennedy.com
17 PWilliams@BaileyKennedy.com
   JMorgan@BaileyKennedy.com

18 *Attorneys for Plaintiffs*

CASE NO: A-25-932405-C
Department 6

19                    DISTRICT COURT
                  CLARK COUNTY, NEVADA
20

21 DANIEL COYNE, individually and on behalf of      Case No.
   those similarly situated; KALUNA AKI,            Dept. No.
22 individually and on behalf of those similarly
   situated; ROBERTO ANGULO, individually and on    **COLLECTIVE AND CLASS ACTION**
23 behalf of those similarly situated, ROBERT       **COMPLAINT**
   GLOWINSKI, individually and on behalf of those
24 similarly situated; PADILLA MILLS, individually   EXEMPT FROM ARBITRATION:  CLASS ACTION
   and on behalf of those similarly situated; SCOTT  (NAR 3(A), 5(A))
25 NICHOLAS, individually and on behalf of those
   similarly situated; SANDER NYGAARD,
26 individually and on behalf of those similarly
   situated; JOHNNY RODRIGUEZ, individually and
27 on behalf of those similarly situated; MATTHEW
   LONG, individually and on behalf of those
28 similarly situated; BRANDON LIPSCHITZ,
   individually and on behalf of those similarly

1  situated; DAVID GOLDYN, individually and on
   behalf of those similarly situated; STEPHANIE
2  HUNTER, individually, KEVIN DAROSA,
   individually, HARRISON PORTER, individually,
3  and on behalf of those similarly situated;

4                          Plaintiffs,

5          vs.

6  LAS VEGAS METROPOLITAN POLICE DEPARTMENT,
   a law enforcement agency; CITY OF LAS VEGAS, a
7  municipality.

8                          Defendants.

9          Plaintiffs Daniel Coyne, Kaluna Aki, Roberto Angulo, Robert Glowinksi, Padilla Mills,

10  Scott Nicholas, Sander Nygaard, Johnny Rodriguez, Matthew Long, Brandon Lipschitz, David

11  Goldyn, Stephanie Hunter, Kevin Darosa, and Harrison Porter (collectively, "Plaintiffs" and "Class

12  Representatives"), individually and on behalf of all others similarly situated, hereby bring this

13  action against the Las Vegas Metropolitan Police Department and the City of Las Vegas.

14                          **CASE SUMMARY**

15          1.     Plaintiffs are officers employed or previously employed full time by the Las Vegas

16  Metropolitan Police Department (the "LVMPD") or the City of Las Vegas (the "City") and are or

17  were members of the Las Vegas Police Protective Association ("PPA") and/or the Police Managers

18  and Supervisors' Association (PMSA).  Plaintiffs contend that LVMPD and the City willfully

19  violated the Fair Labor Standards Act of 1938 ("FLSA") and Nevada Law by, *inter alia*, failing to

20  properly compensate them for overtime hours worked.  Specifically, Plaintiffs allege that LVMPD

21  and the City failed to include employee contributions to the Public Employees' Retirement System

22  of Nevada ("PERS") in their calculation of officers' overtime rate of pay, thereby artificially

23  deflating their overtime pay.  Because overtime wages are not subject to PERS contributions,

24  Defendants' failure to adjust the overtime rate accordingly resulted in the systemic underpayment

25  of overtime compensation.  Plaintiffs seek to recover unpaid overtime compensation, other forms

26  of compensation and/or wages, damages, liquidated damages, interest, and attorneys' fees and

27  costs.

28

2.      Plaintiffs' claims under federal and state laws are brought as a hybrid action;

meaning that Plaintiffs' claims under the FLSA are brought as a collective action pursuant to 29

U.S.C. § 216(b), and Plaintiffs' claims under Chapters 608 and 286 of the Nevada Revised Statutes

and Nevada common law are brought as a class action pursuant to NRCP 23.

3.      The proposed collective and class definition is as follows:

> All persons currently or formerly employed by the Las Vegas
> Metropolitan Police Department or the City of Las Vegas as full-time,
> non-exempt hourly peace officers who worked one or more overtime
> shifts during the relevant period, and who (a) are current members of
> the Las Vegas Police Protective Association (PPA) or the Police
> Managers and Supervisors' Association (PMSA), or (b) were PPA or
> PMSA members at the time of their retirement or other separation from
> employment.

**JURISDICTION & VENUE**

4.      At all times relevant to this action, each Plaintiff was a resident of Clark County,

Nevada.

5.      Upon information and belief, each member of the proposed class/collective was, at

all times relevant to this action, a resident of Clark County, Nevada.

6.      LVMPD's primary place of business is in Clark County, Nevada.

7.      The City's primary place of business is in Clark County, Nevada.

8.      The events giving rise to the claims asserted herein all occurred in Clark County,

Nevada.

9.      The aggregate value of the individual claims of all potential class members exceeds

$15,000.  *See* NRCP 23(b).

**PARTIES**

10.     Plaintiff Daniel Coyne ("Officer Coyne") is a resident of Clark County, Nevada and

has been employed full time by LVMPD as a non-exempt hourly employee from January 2008

through the present.

11.     Plaintiff Kaluna Aki ("Officer Aki") is a resident of Clark County, Nevada and has

been employed full time by LVMPD as a non-exempt hourly employee from 2002 through the

present.

12.     Plaintiff Roberto Angulo ("Sergeant Angulo") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee during the relevant time period through the present.

13.     Plaintiff Robert Glowinski ("Officer Glowinski") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee from 2008 through the present.

14.     Plaintiff Padilla Mills ("Officer Mills") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee during the relevant time period through the present.

15.     Plaintiff Scott Nicholas ("Officer Nicholas") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee from 2000 through the present.

16.     Plaintiff Sander Nygaard ("Officer Nygaard") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee during the relevant time period through the present.

17.     Plaintiff Johnny Rodriguez ("Officer Rodriguez") is a resident of Clark County, Nevada and was employed full time by LVMPD as a non-exempt hourly employee from 2001 through April of 2025.

18.     Plaintiff Matthew Long ("Marshal Long") is a resident of Clark County, Nevada and has been employed full time by the City as a non-exempt hourly employee during the relevant time period through the present.

19.     Plaintiff Brandon Lipschitz ("Marshal Lipschitz") is a resident of Clark County, Nevada and has been employed full time by the City as a non-exempt hourly employee during the relevant time period through the present.

20.     Plaintiff David Goldyn ("Marshal Goldyn") is a resident of Clark County, Nevada and was previously employed full time by the City as a non-exempt hourly employee during the relevant time period.

21.     Plaintiff Stephanie Hunter ("Marshal Hunter") is a resident of Clark County, Nevada and has been employed full time by the City as a non-exempt hourly employee during the relevant time period through the present.

22.     Plaintiff Kevin Darosa ("Marshal Darosa") is a resident of Clark County, Nevada and has been employed full time by the City as a non-exempt hourly employee during the relevant time period through the present.

23.     Plaintiff Harrison Porter ("Lieutenant Porter") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee during the relevant time period through the present.

24.     LVMPD is a metropolitan police department duly organized under Chapter 280 of the Nevada Revised Statutes.

25.     LVMPD and the City are each a "public agency" within the meaning of 29 U.S.C. § 203(x), and each an "employer" within the meaning of 29 U.S.C. § 203(d) and NRS 608.011.

26.     LVMPD operates as the law enforcement agency within the unincorporated areas of Clark County, Nevada, and the incorporated areas of the City of Las Vegas.

27.     The City employs City Marshals and Court Marshals that provide law enforcement services in buildings, land, and real property owned, leased, or controlled by the City of Las Vegas.

28.     Plaintiffs in this action and all class/collective members have been "employees" of LVMPD or the City within the meaning of 29 U.S.C. § 203(e) and NRS 608.010 for some or all of the relevant period and, thus, are entitled to the rights, protections, and benefits provided under the FLSA and Nevada law.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this hybrid action on behalf of themselves and all other similarly situated employees as both a collective action under the FLSA (29 U.S.C. § 216) and a class action under Nevada law (NRCP 23).

30.     The Class/Collective is defined as follows:

> All persons currently or formerly employed by the Las Vegas Metropolitan Police Department or the City of Las Vegas as full-time, non-exempt hourly peace officers who worked one or more overtime

shifts during the relevant period, and who (a) are current members of the Las Vegas Police Protective Association (PPA) or the Police Managers and Supervisors' Association (PMSA), or (b) were PPA or PMSA members at the time of their retirement or other separation from employment.[1]

31.     Pursuant to 29 U.S.C. 216(b), an action to recover damages under the FLSA "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."

32.     A collective action under the FLSA is appropriate, as the Class Representatives are similarly situated to the proposed collective action members they seek to represent because they share similar issues of law and fact material to the disposition of their FLSA claims.  Specifically, each (1) was or is employed by LVMPD or the City as non-exempt hourly employee during the relevant period, (2) was or is a member of the PPA and/or the PMSA, (3) worked one or more overtime shifts during the relevant period, and (4) did not receive the correct overtime rate of pay under the FLSA because it did not include employee contributions to PERS.

33.     Pursuant to NRCP 23, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

a.     **Numerosity**:   Considering that the PPA has approximately 3,300 members, most of whom who work overtime, there are thousands of LVMPD and City officers who are potential class members—not to mention additional former LMVPD and City officers. Accordingly, joinder of all of these members of the proposed class would certainly be impracticable.

---

[1]     As addressed below, the Class/Collective definition may need to be modified or separated into subclasses to address other under-compensation damages relating to certain forms of holiday pay, court pay, vacation leave, sick leave, and/or annual leave which—similar to overtime pay—is not subject to PERS contributions, and thus, Plaintiffs' rate of pay should not have been artificially reduced to account for employee PERS contribution.

b.    **Commonality**:  Common questions of law and fact affect all the putative class members.  The class has been tailored to include putative members who were subject to a common LVMPD and City policy and/or practice relating to the calculation of his/her overtime rate of pay.  The primary legal issue this Court will be tasked with deciding—which is identical across the class—is whether employee contributions to PERS should be included in the regular wage rate in order to calculate overtime compensation.

c.    **Typicality**: Plaintiffs' claims are typical of all putative class members because each Plaintiff suffered injuries that are similar to all other class members, in which LVMPD and the City calculated their regular wage rate without including employee contributions to PERS.

d.    **Adequacy**:  Plaintiffs will fairly and adequately represent the interests of the class because Plaintiffs are members of the class, they have issues of law and fact in common with all members of the proposed class, and they do not have interests that are antagonistic to the class.  Plaintiffs and counsel are aware of their fiduciary responsibilities to class members and are determined to discharge those duties diligently and vigorously by seeking the maximum possible recovery for class members as a group.

e.    **Predominance**:  As discussed above, the primary legal issue this Court will be tasked with deciding—which is identical across the class—is whether employee contributions to PERS should be included in the regular wage rate to calculate overtime pay. Assuming the Court rules in the class members' favor on this particular issue, the only individualized issues will relate to the calculation of damages based on the amount of overtime hours worked by each class member and the correct overtime rate of pay.  Any such individualized issues are relatively simple to calculate and can be resolved uniformly via payroll records and expert calculations/testimony.

34.    A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the class is impractical, and the prosecution of separate actions by individual members of the class would create a risk of:

   a.  Inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class; and

   b.  Adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

**STATEMENT OF FACTS**

**A.** **LVMPD and City Employment of Peace Officers.**

35. Police officers and correctional officers are members of the LVMPD who are charged with the duty to preserve the law, protect life and property, and enforce laws of the State of Nevada, ordinances of the County of Clark, and ordinances of the City of Las Vegas.

   a.  Police officers are duly sworn individuals who are authorized to execute police powers and are charged with law enforcement responsibilities in connection with the LVMPD.

   b.  Corrections officers are duly sworn individuals who are authorized to execute limited police powers and are charged with enforcement of correctional and detention responsibilities in connection with the LVMPD.

36. Las Vegas City Marshals are employed by the City to provide law enforcement services in buildings, land, and real property owned, leased, or controlled by the City of Las Vegas. This includes the Fremont Street Experience, parks, plazas, trails, and approximately 130 city facilities.

37. Similarly, Las Vegas Court Marshals are responsible for the security and safety of Municipal Court Judges, Hearing Masters, staff, civilians, an in-custody defendants.

38. City Marshals and Court Marshals are Category I peace officers under Nevada law, possessing full arrest powers and the authority to conduct traffic stops for observed violations.

39. The work week for each Plaintiff and putative class/collective members is either: (a) forty (40) hours per week; or (b) 80 hours bi-weekly.

40.     For all working hours (or portions thereof) in excess, Plaintiffs and putative class/collective members are entitled to compensation at a rate of 1½ times their regular rate of pay.

41.     During the years prior to the initiation of this action, Plaintiffs (and putative class/collective members) have each worked overtime hours without being compensated at the *correct* overtime rate of pay.

**B.      Nevada Public Retirement System of Nevada**

42.     The Nevada Public Retirement System of Nevada ("PERS") was created in 1947 and has grown to serve over 100,000 members and 45,000 benefit recipients.

43.     PERS' purpose is to provide lifetime retirement benefits to eligible members.

44.     Over 190 public employers participate in PERS.

45.     PERS provides two different types of retirement plans: (1) the Employer Pay Contribution Plan (the "EPC Plan"); and (2) the Employee/Employer Contribution Plan (the "EEC Plan").

46.     Under the EPC Plan, the employer pays the total PERS contribution on the employee's behalf.  However, the EPC Plan is a misnomer, because the employee is still required to contribute half of the total contribution to PERS.  Per NRS 286.421(3)(a), any employee under the EPC Plan is required to fund his/her employee contribution through either a salary reduction or in lieu of a pay raise, or a combination of the two.

47.     Under the EPC Plan, the employer also makes a separate contribution to PERS that is entirely funded by the employer.

48.     In other words, despite its misleading name, the EPC Plan is funded through both employer and employee contributions.  It is called the EPC Plan only because the employer logistically provides the entire contribution to PERS (i.e., both the employer's portion and the employee's portion).

49.     Under the EEC Plan, the employee contribution to PERS is deducted from each employee's paycheck for each pay period.  Similar to the EPC Plan, the employer provides a separate contribution as well that is funded entirely by the employer, but the employer does not pay the employee contribution on the employee's behalf.

50.    Plaintiffs and the class/collective members, as employees of a local government employer, are required to participate in the EPC Plan.  They are not permitted to participate in the EEC Plan, which is primarily available to employees of the State of Nevada.

51.    Police officers and firefighters have their own separate PERS fund, which is aptly entitled the "Police and Firefighters' Retirement Fund."

52.    Under the EPC Plan, Nevada law confirms that the employee is providing an employee contribution to PERS, and that any such contribution remains an employee contribution even though it is logistically paid by the employer.  *See* NRS 286.421(8) ("For the purposes of adjusting salary increases and cost-of-living increases or of salary reduction, the total contribution must be equally divided between employer and employee.").

53.    In other words, the employee is foregoing compensation she would be entitled to in exchange for her employer remitting her contribution to PERS on her behalf.[2]

54.    In order to ensure that members of an EPC Plan are treated fairly as compared to members of an EEC Plan, Nevada law requires that EPC Plan members' compensation levels be adjusted upwards at the time of retirement to account for any decrease in their salary and/or foregoing pay raises that were used by the employer to fund employee contributions to PERS.  NRS 286.421(3)(b).

55.    The contribution rates for PERS are adjusted biennially based on actuarial projections.

56.    Under both the EPC Plan and the EEC Plan, biennial changes in contribution rates are shared equally between employers and employees.

57.    Under the EPC Plan, assuming there is an increase in the contribution rate, each employee will again be required to take further pay decreases and/or forego salary increases to fund employee contributions to PERS.

---

[2]    The gender designation herein is arbitrary and for sentence context only.

58.     Currently, with respect to police and firefighters under the EPC Plan, the contribution rate is set at 58.75% of salary, with 29.375% paid via employee contribution and 29.375% paid via employer contribution.

59.     Thus, in order for LVMPD to continue paying the 29.375% employee contribution into PERS on the employees' behalf, all LVMPD employees' salaries are significantly lower than they would be if the employee were not required to participate in PERS, or if the employee was on the EEC Plan and making their employee contributions via a paycheck deduction.

60.     Similarly, in order for the City to continue paying the 29.375% employee contribution into PERS on its officers' behalf, all City officers' salaries are significantly lower than they would be if they were not required to participate in PERS, or if the officers were on the EEC Plan and making their employee contributions via a paycheck deduction.

**C.     Treatment of Employee PERS Contributions for the Purpose of Calculating the Overtime Rate of Pay.**

61.     While NRS 286.421(3)(b) ensures that a member of the EPC Plan is not disadvantaged as compared to a member of the EEC Plan when it comes to calculating compensation levels for retirement benefits, the various reductions to Plaintiffs' and class/collective members' rate of pay throughout the years in order to fund employee contributions under the EPC Plan has led to significantly lower hourly rates.

62.     While the differences between the EPC Plan and the EEC Plan do not make a significant difference in regular take-home pay because, in either scenario, compensation that the employee is entitled to is being used to fund employee contributions to PERS, it has made an astronomical difference in the calculation of overtime rate of pay because employers like LVMPD and the City improperly use the artificially reduced wage rates to calculate their overtime rate of pay, as well as other compensable categories (i.e., certain forms of holiday pay, court pay, vacation leave, sick leave, and/or annual leave).

63.     Under the EPC Plan, because employee contributions have been funded through reductions in rates of pay or in lieu of pay raises, Plaintiffs and the class/collective members' hourly

rate has been reduced substantially, thereby leading to a much smaller rate when overtime (at time and a half) is calculated.

64.    For example:

- Let's assume a Metro Officer is being paid \$30/hour, is a member of the EPC Plan (which is mandatory), and her PERS employee contribution is 25%.[3]  The Officer is only being paid \$30/hour because LVMPD is responsible for remitting her employee contribution to PERS, and thus, throughout the years, has reduced her salary and/or pay raises in order to remit her contribution to PERS.  The Officer's actual hourly pay rate would be \$40/hour, as \$10/hour is subtracted as her PERS contribution (25% of \$40/hour = \$10/hour), the reduction occurring because of the EPC Plan in which she is required to participate.

- When LVMPD is paying the Officer for overtime work, it is incorrectly calculating her overtime rate by multiplying the artificially reduced rate (\$30/hour) by time and a half, equaling \$45/hour.  However, if LVMPD were to use the Officer's actual hourly pay rate (\$40/hour), it would correctly calculate the Officer's overtime hourly rate as \$60/hour (\$40/hour times 1.5). LVMPD is therefore underpaying the Officer by \$15/hour (\$60/hour minus \$45/hour) for all overtime compensation.

- For comparison purposes, a member of the EEC Plan that is required to make a similar employee contribution to PERS would instead receive a rate of \$40/hour, and then, for each payroll period, would directly contribute a payroll deduction of \$10/hour to PERS.

- As explained above for the Officer on the EPC Plan, when calculating overtime rate of pay, LVMPD (incorrectly) multiplies \$30/hour by 1.5 for \$45/hour.  However, for the employee on the EEC Plan, when calculating overtime rate of pay, the public employer (correctly) multiplies \$40/hour by 1.5 for \$60/hour, *which amounts to an hourly increase of \$15/hour for all overtime compensation*.

---

[3]    This example is for illustrative purposes only; actual computations will be determined through discovery.

65. Whether an employee is a member of the EPC Plan or the EEC Plan, Defendants' payment of overtime compensation without inclusion of employee contributions to PERS to the employee's regular rate of pay violates both federal and Nevada law.

66. Under the FLSA, the regular rate includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C.A. § 207(e).

67. Under the FLSA, only certain **employer** contributions—and not **employee** contributions—are excluded from the "regular rate of pay" for the purpose of calculating overtime compensation. *See* 29 U.S.C.A. § 207(e)(4); 29 C.F.R. § 778.214; 29 C.F.R. § 5.32. For the purposes of calculating the "regular wage rate" under NRS 608.018, Nevada follows the lead of the FLSA and its relevant federal authority. *See Rite of Passage v. State of Nevada*, 131 Nev. 1338, 2015 WL 9484735, at *1 (Nev. 2015) (unpublished disposition) (citing *Terry v. Sapphire Gentleman's Club*, 130 Nev. 879, 336 P.3d 951 (2014)).

68. Accordingly, under the EPC Plan, and similar to the EEC Plan, employee contributions to PERS must be factored into Plaintiffs and the class/collective members' "regular rate of pay" and "regular wage rate" when calculating overtime compensation.

69. Yet, LVMPD and the City treat public employees on the EPC Plan differently than public employees on the EEC Plan, thereby paying them significantly less in overtime compensation merely due to the difference in the PERS plan in which Plaintiffs and the class/collective members are required to participate.

**D. Overtime Compensation is Not Contributed to PERS.**

70. As discussed above, under the EPC Plan, the purpose of the salary reduction and/or foregone pay raises is to fund the employee contribution to PERS. In other words, the only reason members under the EPC Plan are receiving a substantially reduced salary is to fund his/her retirement contributions.

71. Yet, when Plaintiffs and the class/collective members work most types of overtime, their overtime compensation is not contributed toward PERS. NRS 286.481; *see also* LVMPD Policy Manual 5/101.33 ("Overtime pay is NOT subject to retirement system contributions.").

72.     In other words, under the EPC Plan, LVMPD and the City use an artificially reduced salary which is only in place to fund employee contributions to PERS, yet also improperly uses that same artificially reduced salary to calculate overtime compensation when there is no corresponding requirement that LVMPD and the City contribute an employee contribution (or employer contribution for that matter) to PERS for overtime compensation.

73.     This improper approach allows LVMPD and the City to financially benefit from reduced salaries under the EPC Plan (as compared to the EEC Plan) by paying a lower rate for overtime compensation without any corresponding requirement to remit additional employee funds to PERS for overtime compensation.

**E.     Additional Compensation Which is Not Subject to PERS Contributions.**

74.     LVMPD and the City pay additional forms of wages and/or compensation to Plaintiffs and the putative class/collective members which are not subject to PERS contributions because they do not fall within the definition of compensation in NRS 286.025.

75.     For example, Metro officers who do not work on a holiday are entitled to compensation and/or wages on a straight time basis (*i.e.*, unworked holiday pay).

76.     Under NRS 286.025, holiday pay is only subject to PERS contributions "if it does not exceed the working hours of the normal workweek or pay period for that employee."

77.     Accordingly, unworked holiday pay is not subject to PERS contributions.

78.     As a result, straight time pay should be paid at a regular rate of pay that is not artificially reduced for employee PERS contributions.

79.     There are other forms of compensation and/or wages that fall outside the definition of compensation in NRS 286.025, and thus, should be paid at a regular rate of pay that is not artificially reduced for employee PERS contributions.

80.     Those other forms of compensation include, but are not limited to, court pay, payment for accrued vacation leave, sick leave, and/or annual leave on an annual basis, and/or payment for accrued vacation leave, sick leave, and/or annual leave at retirement.

81.     Certain Plaintiffs, including, but not limited to, Scott Nicholas, have been underpaid for the compensation and/or wages described above ("Non-Pensionable Compensation").  To the

extent necessary, a subclass should be certified to address LVMPD's underpayments for Non-Pensionable Compensation.

**THE NAMED PLAINTIFFS/CLASS REPRESENTATIVES**

82. For some or all of the relevant time periods prior to filing the Complaint, each Plaintiff and putative class/collective member was an employee of LVMPD or the City and worked overtime shifts and/or earned Non-Pensionable Compensation.

83. As discussed above, due to LVMPD and the City's failure to correctly calculate the "regular wage rate" under NRS 608.018 and the "regular rate of pay" under the FLSA, Plaintiffs and the class/collective members have been significantly underpaid for overtime compensation and continue to be underpaid to this day.

84. Similarly, Plaintiffs and the class/collective members have been significantly underpaid for Non-Pensionable Compensation and continue to be underpaid to this day.

85. For example:

   a. Officer Aki earned $12,233.58 in overtime compensation in 2022, and continued working overtime in 2023 through 2025.[4] If Officer Aki's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

   b. Sargeant Angulo earned $35,909.49 in overtime compensation in 2022, and continued working overtime in 2023 through 2025. If Officer Angulo's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

   c. Officer Glowinksi earned $12,834.85 in overtime compensation in 2022. If Officer Glowinksi's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid

---

[4] LVMPD and the City are exclusively in possession of Plaintiffs' payroll records, and thus, Plaintiffs do not have access to the precise amounts of overtime compensation and/or Non-Pensionable Compensation earned by Plaintiffs during the relevant time period. Further, these subparagraphs are exemplars and certainly not the extent of damages suffered by the Plaintiffs.

significantly more in additional compensation.  He also earned Non-Pensionable Compensation during the relevant period.

d.  Officer Mills earned $3,785.85 in overtime compensation in 2022, and continued working overtime in 2023 through 2025.[5]  If Officer Mills' employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

e.  Officer Nicholas earned Non-Pensionable Compensation during the relevant period.  If the correct rate of pay had been used as opposed to the artificially reduced amount which accounts for an employee PERS contribution, he would have been paid significantly more in additional Non-Pensionable Compensation.

f.  Officer Coyne earned Non-Pensionable Compensation during the relevant period.  If the correct rate of pay had been used as opposed to the artificially reduced amount which accounts for an employee PERS contribution, he would have been paid significantly more in additional Non-Pensionable Compensation.

g.  Officer Nygaard earned $36,183.37 in overtime compensation in 2022, and continued working overtime in 2023 through 2025.[6]  If Officer Nygaard's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

h.  Officer Rodriguez earned $3,399.97 in overtime compensation in 2022, and continued working overtime until his retirement.  If Officer Rodriguez' employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

---

[5]     As just one example, Officer Mills worked 68 separate special event overtime shifts in 2023 and 2024.

[6]     For example, Officer Nygaard worked seven separate Clark County Detention Center hospital overtime shifts in 2024.

i.  Marshal Long earned $5,444.85 in overtime compensation in 2023, and continued working overtime in 2024 through 2025.  If Marshal Long's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

j.  Marshal Lipschitz earned $20,091.56 in overtime compensation in 2023, and continued working overtime in 2024 through 2025.  If Marshal Lipschitz' employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

k.  Marshal Goldyn earned $9,231.16 in overtime compensation in 2023, and continued working overtime until his retirement.  If Marshal Goldyn's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

l.  Marshal Hunter earned overtime compensation during the relevant time period.  If Marshal Hunter's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," she would have been paid significantly more in additional compensation.

m.  Marshal Darosa earned $2,249.78 in overtime compensation in 2022, and continued working overtime in 2023 through 2025.  If Marshal Darosa's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

n.  Lieutenant Porter earned overtime compensation during the relevant time period.  If Lieutenant Porter's employee PERS contributions had been included in the "regular wage rate" and "regular rate of pay," he would have been paid significantly more in additional compensation.

**CLAIMS FOR RELIEF**

<u>**Claim for Relief No. 1**</u>

**(FLSA) 29 U.S.C. § 207/29 U.S.C. § 216**

(On Behalf of Plaintiffs and All Collective Members)

86.     Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

87.     As the United States Supreme Court has stated, "[t]he keystone of Section 7(a) is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).

88.     The FLSA requires that an employer include all remuneration for employment in an employee's regular rate for the purpose of calculating overtime except for certain narrow exceptions specifically set forth in the statute. 29 U.S.C. § 207(e); 29 CFR § 778.108.

89.     There is a statutory presumption "that remuneration in any form is included in the regular rate calculation. The burden is on the employer to establish that the remuneration in question falls under an exception." *Madison v. Res. For Human Dev. Inc.*, 233 F.3d 175, 187 (3d Cir. 2000).

90.     There is no specific exclusion from the "regular rate of pay" for employee contributions to PERS or other similar retirement/pension plans.

91.     To the contrary, the regular rate includes "all remuneration for employment paid to, *or on behalf of*, the employee." 29 U.S.C.A. § 207(e) (emphasis added).

92.     Under the EPC Plan, LVMPD and the City pay employee contributions to PERS "on behalf of" their employees.

93.     Yet, under the EPC Plan, LVMPD and the City have failed, and continue to fail, to include employee contributions to PERS in the "regular rate of pay" for overtime compensation.

94.     As a result, Plaintiffs and the collective members have been significantly underpaid for overtime compensation and continue to be underpaid to this day.

95.     By failing and refusing to pay Plaintiffs and other similarly situated employees the overtime pay required under law, LVMPD and the City have willfully violated, and are continuing to willfully violate the FLSA.

96.     LVMPD and the City knowingly and intentionally failed to pay the correct overtime rate to their employees, or acted with reckless indifference in doing so.

97.     At all times relevant hereto, LVMPD, the City, and their agents and representatives were aware of their obligations to properly calculate the overtime compensation owed to Plaintiffs and all collective members and knew that they had failed to compensate Plaintiffs and all collective members for all overtime hours worked.

98.     As a result of LVMPD and the City's willful violations of the FLSA, they have unlawfully withheld overtime compensation from each Plaintiff and all collective members for which Defendants are liable pursuant to 29 U.S.C. §§ 216(b) and 255, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and the costs of this action.

99.     As a result of LVMPD and the City's willful violations of the FLSA, there have become due and owing to each of the Plaintiffs and all collective members various amounts that have not yet been precisely determined. The employment and work records for each Plaintiff and all collective members are in the exclusive possession, custody, and control of LVMPD and the City and Plaintiffs are unable to state at this time the exact amounts owing to each of them.

100.    As a result of LVMPD and the City's unlawful conduct, Plaintiffs and collective members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

**Claim for Relief No. 2**

**Violations of NRS 608.016, NRS 608.018, & NRS 608.140**

**Failure to Pay for All Hours Worked**

(On Behalf of Plaintiffs and All Class Members)

101.    Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

102.    NRS 608.140 provides that an employee has a private right of action for unpaid wages "[w]henever a[n] . . . employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit."

103.    Plaintiffs made a demand for unpaid wages upon LVMPD and the City pursuant to NRS 608.140, but satisfactory payment was not received.

104.    NRS 608.016 provides that "an employer shall pay to the employee wages for each hour the employee works."

105.    NRS 608.018 requires that that overtime compensation be paid at 1 ½ times an employee's regular wage rate.

106.    Similar to the FLSA claims set forth above, under the EPC Plan, LVMPD and the City have failed, and continue to fail, to include employee contributions to PERS in the "regular wage rate" for overtime compensation.

107.    As a result, Plaintiffs and the class members have been significantly underpaid for overtime compensation and continue to be underpaid to this day.

108.    As a result of LVMPD and the City's unlawful conduct, Plaintiffs and class members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

109.    Upon information and belief, at all relevant times, LVMPD and the City were aware or should have been aware that its failure to compensate its employees was wrongful, oppressive, and malicious, and thus, its actions necessitate the award of punitive and exemplary damages under NRS 42.005.

**Claim for Relief No. 3**

**Violation of NRS 608.020-608.050 and NRS 608.135**

**Failure to Timely Pay All Wages Due and Owing Upon Termination**

(On Behalf of Plaintiffs and All Class Members)

110.    Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

111.    NRS 608.135 creates a private right of action for unpaid wages owed to an employee at the termination of service.  It provides that "[i]f an employer fails to pay wages, compensation or salary to an employee in accordance with the requirements set forth in NRS 608.020 to 608.050, inclusive, the employee may, at any time within 2 years after the employer's failure, bring a civil action against the employer."

112.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

113.    NRS 608.030 provides that "[w]henever an employee resigns or quits his or her employment, the wages and compensation earned and unpaid at the time of the employee's resignation or quitting must be paid no later than: (1) The day on which the employee would have regularly been paid the wages or compensation; or Seven days after the employee resigns or quits, whichever is earlier."

114.    NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

115.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full,

without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

116. By failing to pay former employees for all hours worked in violation of state law, LVMPD and the City have failed to timely remit all wages due and owing to members of the class.

117. As a result of LVMPD and the City's unlawful conduct, members who were discharged or quit are owed thirty (30) days wages under NRS 608.040, and members who were discharged or laid off are entitled to an additional thirty (30) days wages under NRS 608.050.

118. As a result of LVMPD and the City's unlawful conduct, members of the class seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

119. Upon information and belief, at all relevant times, LVMPD and the City were aware or should have been aware that its failure to compensate its employees was wrongful, oppressive, and malicious, and thus, its actions necessitate the award of punitive and exemplary damages under NRS 42.005.

**Claim for Relief No. 4**

**Implied Contract**

**(On Behalf of Plaintiffs and All Class Members)**

120. Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

121. Based on Defendants' policies as well as the course of dealing between Defendants and their employees, there is an implied contractual obligation to pay employees at 1½ times their regular pay rate for compensable overtime.

122. By failing to compensate Plaintiffs and class members at the correct overtime rate, Defendants have breached this implied contractual obligation.

123. Based on Defendants' policies as well as the course of dealing between Defendants and their employees, there is an implied obligation to pay a rate of pay which is not artificially reduced to account for an employee PERS contribution for Non-Pensionable Compensation.

124.    By failing to compensate Plaintiffs and class members at the correct rate, Defendants have breached this implied contractual obligation.

125.    As a result of Defendants' conduct and implied contractual breaches, Plaintiffs and class members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

**Claim for Relief No. 5**

**Unjust Enrichment**

(On Behalf of Plaintiffs and All Class Members)

126.    Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

127.    As described above, under the EPC Plan, the purpose of the salary reduction and/or foregone pay raises is to fund the employee contribution to PERS.  In other words, the only reason members under the EPC Plan are receiving a substantially reduced salary is to fund their retirement contributions.

128.    Yet, when Plaintiffs and the class members work overtime, none of their overtime compensation is contributed toward PERS.  NRS 286.481.

129.    In other words, under the EPC Plan, LVMPD and the City used (and continue to use) an artificially reduced salary which is only in place to fund employee contributions to PERS, yet they also (improperly) used (and continue to use) that same artificially reduced salary to calculate overtime compensation when there is no corresponding requirement that LVMPD and the City contribute employee contributions to PERS for overtime compensation.

130.    This improper approach allows LVMPD and the City to financially benefit from reduced salaries under the EPC Plan (as compared to the EEC Plan) by paying a lower rate for overtime compensation and Non-Pensionable Compensation without any requirement to contribute additional employee funds to PERS for overtime compensation and Non-Pensionable Compensation.

131.    Thus, Plaintiffs and class members conferred a benefit on LVMPD by receiving a reduced salary or forgoing pay raises in order to fund employee PERS contributions on regular

wages, but LVMPD and the City were able to improperly retain the benefits of those salary reductions in paying overtime compensation and Non-Pensionable Compensation at the artificially reduced rate while not being required to forward any employee funds to PERS for overtime compensation and Non-Pensionable Compensation.

132.    LVMPD and the City have appreciated, accepted, and retained these benefits.

133.    It would therefore be inequitable not to compensate Plaintiffs and class members for the financial benefits LMVPD and the City were able to retain.

134.    As a result of Defendants' conduct, Plaintiffs and class members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

**Claim for Relief No. 6**

**Conversion**

(On Behalf of Plaintiffs and All Class Members)

135.    Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

136.    Plaintiffs and class members are rightfully entitled to compensation for the overtime and Non-Pensionable Compensation underpayments described above.

137.    LMVPD and the City wrongfully converted this compensation by failing to pay their employees for the correct rate of pay.

138.    As a result of LVMPD and the City's unlawful conduct, Plaintiffs and class members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

139.    Upon information and belief, at all relevant times, LVMPD and the City were aware or should have been aware that its failure to compensate its employees was wrongful, oppressive, and malicious, and thus, its actions necessitate the award of punitive and exemplary damages under NRS 42.005.

**<u>Claim for Relief No. 7</u>**

NRS 286.460(7) and/or NRS 608.100

(On Behalf of Plaintiffs and All Class Members)

140.    Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

141.    As discussed above, LVMPD and the City have been paying artificially reduced rates of pay to Plaintiffs and the class members for Non-Pensionable Compensation, including holiday pay, court pay, vacation leave, sick leave, and/or annual leave.

142.    Because LVMPD and City payments for this Non-Pensionable Compensation is not included in the definition of compensation under NRS 286.025, it should not be artificially reduced to account for employee PERS contributions that were never made.

143.    Plaintiffs and the class members were undercompensated for Non-Pensionable Compensation as a result, and LVMPD and the City are therefore liable to Plaintiffs and the class members under NRS 286.460(7) and/or NRS 608.100

144.    As a result of LVMPD and the City's unlawful conduct, Plaintiffs and class members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

145.    Upon information and belief, at all relevant times, LVMPD and the City were aware or should have been aware that its failure to compensate its employees was wrongful, oppressive, and malicious, and thus, its actions necessitate the award of punitive and exemplary damages under NRS 42.005.

**RELIEF SOUGHT**

Plaintiffs, individually and on behalf of all similarly situated individuals and proposed class/collective members, request that this Court award each of them the following relief against Defendants LVMPD and the City:

a.    For an order certifying this action under the FLSA and providing notice to all members so they may participate in the lawsuit;

| | | |
|---|---|---|
| 1 | b. | For an order certifying this action as a traditional class action under Nevada Rule of |
| 2 | | Civil Procedure Rule 23 on behalf of the proposed class; |
| 3 | c. | For an order appointing Daniel Coyne, Kaluna Aki, Roberto Angulo, Robert |
| 4 | | Glowinksi, Padilla Mills, Scott Nicholas, Sander Nygaard, Johnny Rodriguez, |
| 5 | | Matthew Long, Brandon Lipschitz, David Goldyn, Stephanie Hunter, Kevin Darosa, |
| 6 | | and Harrison Porter as the Representatives of the class/collective and their counsel as |
| 7 | | Class Counsel for the class/collective; |
| 8 | d. | An award of back pay based on the correctly calculated regular rate of pay for all |
| 9 | | uncompensated overtime worked prior to and subsequent to the filing of this |
| 10 | | Complaint pursuant to 29 U.S.C. § 216(b); |
| 11 | e. | An award of liquidated damages pursuant to 29 U.S.C. § 216(b); |
| 12 | f. | An award of attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); |
| 13 | g. | An award of back pay under Nevada law based on the correctly calculated regular |
| 14 | | wage rate for all uncompensated overtime and/or Non-Pensionable Compensation |
| 15 | | worked prior to and subsequent to the filing of this Complaint; |
| 16 | h. | Any other damages and/or penalties permitted by law; |
| 17 | i. | An award of exemplary and punitive damages under Nevada law; |
| 18 | j. | An award of attorneys' fees and costs under Nevada law; |
| 19 | k. | For pre- and post-judgment interest at the maximum rate provided by law; and |
| 20 | l. | Any other relief as the Court determines is just and proper. |
| 21 | /// | |
| 22 | /// | |
| 23 | /// | |
| 24 | /// | |
| 25 | /// | |
| 26 | /// | |
| 27 | /// | |
| 28 | /// | |

1

**JURY TRIAL DEMANDED**

2

Plaintiffs demand a trial by jury on all issues so triable.

3

4

DATED this 7th day of November, 2025.

5

6

                                                      SGRO & ROGER

7

                                                      By:  /s/ Alanna Bondy
8
                                                          ANTHONY P. SGRO
                                                          ALANNA C. BONDY
9

                                                      BAILEY❖KENNEDY
10
                                                          JOHN R. BAILEY
                                                          DENNIS L. KENNEDY
11                                                        JOSEPH A. LIEBMAN
                                                          PAUL C. WILLIAMS
12                                                        JOE A. MORGAN

13                                                    *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SCHEDULE "1"

## CONSENTS TO BECOME PARTY PLAINTIFF

## **CONSENT TO BECOME PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: 11/05/2025

Signature:

Printed Name: Kaluna A Aki

## CONSENT TO BECOME PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: 11/4/2025

Signature:

Printed Name: Roberto Angulo Jr.

## <u>CONSENT TO BECOME PARTY PLAINTIFF</u>

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: 11-03-2025

Signature:

Printed Name: Daniel Coyne

## CONSENT TO BECOME PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _I NOV 2025_

Signature: _[signature]_

Printed Name: _Kevin DaRosa_

## <u>CONSENT TO BECOME PARTY PLAINTIFF</u>

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____ 11/04/2025

Signature: _____

Printed Name: _____ Robert Glowinski

## CONSENT TO BECOME PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: 11/06/25

Signature:

Printed Name: David Goldyn

## <u>CONSENT TO BECOME PARTY PLAINTIFF</u>

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada.  I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____ 11/03/2025 _____

Signature: _____

Printed Name: ____ Stephanie Hunter _____

## CONSENT TO BECOME PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____11/04/2025_____

Signature: _____

Printed Name: _____Brandon Lipschitz_____

**CONSENT TO BECOME PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____11/04/2025_____

Signature: _____

Printed Name: ___MATTHEW LONG___

## **CONSENT TO BECOME PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____11/5/25_____

Signature: _____

Printed Name: _____Padilla Mills_____

## **CONSENT TO BECOME PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____11/4/2025_____

Signature: _____

Printed Name: ___Scott Nicholas_____

## CONSENT TO BECOME PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _11/04/2025_____

Signature: _____

Printed Name: _Sander Nygaard_____

## CONSENT TO BECOME PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: 11/06/25

Signature:

Printed Name: HARRISON PORTER

## **CONSENT TO BECOME PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), I hereby consent in writing to become a party plaintiff against my employer/former employer, the Las Vegas Metropolitan Police Department or the City of Las Vegas, as the case may be, and/or any and all of their affiliated or related entities for the purpose of seeking recovery of unpaid wages, liquidated damages, and any other relief available under the law arising from my employer's failure to properly compensate me in accordance with the Fair Labor Standards Act.

I authorize the filing of a copy of this Consent form with the Eighth Judicial District Court in and for Clark County, Nevada and/or the United States District Court, District of Nevada. I further consent to join this and/or any subsequent or amended suit against the same or related defendant(s) for wage and hour violations.

Date: _____11-04-2025_____

Signature: _____

Printed Name: _____Johnny G Rodriguez_____